**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

      Plaintiff,

vs.

MIAMI AUTOMOTIVE RETAIL, INC.
d/b/a Brickell Honda

      Defendant.

---

## COMPLAINT

---

      COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Miami Automotive Retail, Inc. doing business as "Brickell Honda" ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

### <u>INTRODUCTORY STATEMENT</u>

      1.      Plaintiff brings this action in Federal Court to stop the exclusion of blind, vision impaired, and low vision patrons of Defendant's business.

2.      Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination**.

3.      When business owners offer services that are inaccessible and then do not notice the public that those services are inaccessible, those business owners are not only marginalizing the visually impaired community, but are actively excluding those members of the public who are visually impaired from their business.

4.      This case arises out of the fact that Defendant has operated its business in a manner and way that effectively excludes individuals who are visually impaired from access to Defendant's business.

5.      This complaint seeks declaratory and injunctive relief to have Defendant update its policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that individuals who are blind or visually impaired can communicate with Defendant effectively and timely such that their access to Brickell Honda auto dealership (place of public accommodation) are not impeded; as such impediment has rendered Defendant's physical business location not fully accessible to the visually impaired.

6.      This complaint also seeks compensatory damages as compensation for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

7.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §

2

1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

8.      This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

9.       State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

10.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its Website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, the Defendant's dealership is located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a Florida for-profit corporation.

11.      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

12.      Plaintiff Juan Carlos Gil is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA.

13.      Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Plaintiff suffers optic nerve damage and is legally blind. Plaintiff also suffers from cerebral palsy, is unable to walk, and is

confined to a wheelchair. Therefore, Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

14.     Plaintiff is an athlete who travels for his athletic triathlon endeavors, and also is an advocate for the rights of blind and wheelchair bound disabled individuals.[1]

15.      In the past year, Plaintiff has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[2], the American Counsel for the Blind convention in Nevada, and various focus groups and meetings throughout the east coast (including New York and Boston).

16.     Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

17.     Defendant Miami Automotive Retail, Inc. is the owner and operator of an automobile dealership under the brand name "Brickell Honda." Founded in 2000, Defendant owns and/or operates the new and used Honda automobile dealership within the State of Florida. Brickell Honda offers the ability for the public to purchase a vehicle online, to view its inventory of new and used vehicles online, the ability for the public the ability to schedule service online, find contact information and location, ask questions to

---

[1] Juan Carlos Gil has traveled to speak on disabled rights, written letters, and mentored other disabled individuals as well as being the Plaintiff in the Landmark Historic federal trial over Web Accessibility (*Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020); See press release on case: www.prweb.com/releases/2017scottrdinin/06civilrights/prweb14437034.htm
[2] July 2017

an online representative, view service FAQs, view extended warranty information, access their parts center, and value a trade-in vehicle.

## FACTS

18.     Defendant owns and operates a place of public accommodation which is an auto dealership and auto repair business ("dealership") under the brand name "Brickell Honda."

19.     Defendant's offers new and used automobiles and repair services to the public, which are heretofore referenced as "products and services."

20.     Defendant's Brickell Honda auto dealership sells new and used automobiles, parts and accessories and is open to the public and is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as an "other service establishment" as defined by 42 U.S.C. §12181(7)(E); §12182, and 28 C.F.R. Part 36. Defendant's Brickell Honda auto dealership is also referenced throughout as "Place(s) of Public Accommodation," "dealership," or "Brickell Honda dealership."

21.     Defendant's dealership also contains automobile service facilities which repair automobiles, and as such is also defined as a place of public accommodation as an "other service establishment" under 42 U.S.C. §12181(7)(F).

22.     Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates an automobile dealership and automotive service center as defined under 42 U.S.C. §§s 12181(7)(E) & (F).

23.     Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.brickellhonda.com ("Website").

24.     Defendant's Website is offered by Defendant as an electronic on-line dealership which permits the public to obtain information on Brickell Honda new and used automobiles (products) and automotive repair (services); heretofore, "products and services."  From the Website the public can find out the inventory of new and used automobiles in Defendant's automobile showroom, become pre-approved for an auto loan, can purchase a vehicle 100% online, can schedule an appointment for automobile service and repair, can live chat with a sales representative, and other information Defendant is interested in communicating to the public.

25.     For all of the reasons as delineated herein, clearly, the Website is an integral part of the products and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §§s 12181(7)(E) & (F) of the ADA[3].

26.     Defendant's Website is also an on-line automobile dealership where the public can view and purchase Brickell Honda new and used vehicles and auto parts, which are then available for pick up at the Brickell Honda auto dealership.   Therefore,

---

[3] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." (See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

the Website is itself a sales establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(E).

27.     Since, at all times material hereto, Defendant has owned and operated the Website and the Website is open through the internet to the public as part of its dealership and service/repair facilities, Defendant (as the owner/operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §§s 12181(7)(E) & (F) and 28 C.F.R. §36.104(2).

28.     Plaintiff is a customer who is interested in purchasing an automobile and such as offered at Defendant's 690 SW 8th Street, Miami, Florida 33130 dealership.

29.     In March 2018, Plaintiff called Defendant to inquire about the inventory of automobiles at Defendant's dealership (styles, colors, packages available for those automobiles and pricing) and about becoming pre-qualified for an automobile loan. However, Defendant's representative failed to fully assist Plaintiff Gomez and referred him to its Website.

30.     After being disconnected by Defendant's representative, Plaintiff Gomez tried to interact and engage the Defendant through its Website to find out the style/model options, colors, package deals and prices on the inventory of cars available at the dealership located at 690 SW 8th Street, Miami, FL 33130 (which Defendant's representative would not take the time to provide to him over the phone) in order to then make plans to travel to the dealership.

31.     Plaintiff utilizes screen reader software, which when utilized allows him (as a blind individual) to communicate with internet websites.

32.     When Plaintiff tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

33.     Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[4].

34.     Furthermore, Defendant's Website does not have the sign of website accessibility[5].

35.     Defendant has not provided any other auxiliary aid or service which would assist Plaintiff (or other visually impaired customers) to meaningfully access and comprehend Defendant's inventory of new and used automobiles, to become pre-approved for an automobile loan, or to schedule automobile repair service, as this information (and service) is available to the public through Defendant's Website.

36.     Defendant's Website was inaccessible so Plaintiff could not purchase an automobile online. Neither could Plaintiff:

    a.  learn about Defendant's inventory of new and used automobiles,
    b.  apply for an automobile loan and become pre-approved prior to coming to the dealership,
    c.  schedule an on-line chat regarding automobiles for sale, and/or
    d.  schedule automobile service or repair.

37.     Plaintiff has tried and has been unable to access and comprehend the Defendant's Website. By denying Plaintiff the opportunity to comprehend Defendant's

---

[4]  "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design."  Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[5] 

Website due to Plaintiff's disability (visual impairment), Plaintiff has been denied access to Defendant's dealership and repair services since he is wholly unable obtain meaningful information regarding automobiles for sale and financing options (including applying for financing online).

38.   Like any other citizen, Plaintiff has been frustrated in his inability to understand the basic information about Defendant's automobile inventory and financing options.  Due to this frustration, Plaintiff has given up hope of going to Defendant's dealership

39.   The fact that Plaintiff could not access the Website Defendant offered left him excluded from accessing the Defendant's products and services offered and further left Plaintiff with the feeling of segregation, rejection, isolation, and unable to participate in his own business affairs (such as purchasing a car and financing that car purchase) in a manner equal to that afforded to others who are not similarly disabled.

40.   This inability to participate in Defendant's products and services has resulted in a *virtual barrier* which has created an *effective barrier* to access to Defendant's dealership and repair services and to the products and services offered by Defendant.  Plaintiff inability to fully use Defendant's Website has hindered, impeded and inhibited his future access to Defendant's physical dealership and automobile repair services. Plaintiff has suffered as a result and has suffered particularized harm and an injury in fact.

41.   While the Plaintiff could certainly "roll" over to the Brickell Honda auto dealership location at 690 SW 8th Street, Miami in his wheelchair, but without access to the Brickell Honda products and services (due to the Website's lack of accessibility)

Plaintiff faces a great deal of uncertainty, anxiety, and foreboding in physically undertaking such an outing, because he lacks basic understanding of the *who, what, where, and how* to physically travel to Defendant's auto dealership.

42.    By denying Plaintiff the opportunity to comprehend its Website **d**ue to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff the opportunity to participate in, or benefit from, Defendant's products and services (automobiles, financing for automobiles and automobile repair services) afforded to the public (non-disabled persons and persons who are not visually impaired).

43.    Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with Defendant in order to obtain access to Defendant's physical dealership location in order to participate in shopping for an automobile, automobile financing and obtaining automobile repair services offered at Defendant's dealership location. Plaintiff will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

44.    On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

45.    On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Website.

46.    On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an

information portal explaining when and how the Defendant will have its Website accessible to the visually impaired community.

47.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its auto dealership.

48.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

49.     On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

50.     Defendant and alike automobile dealerships and automotive repair centers are fully aware of need to provide full access to all visitors to its Website.[6]

51.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

52.     According to the National Federation for the Blind[7], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[8].

---

[6] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/), (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )
[7] See  https://nfb.org/blindness-statistics
[8] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

53.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff's inability to investigate, compare and obtain products and services themselves.

54.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

55.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**<u>Trespass Violations</u>**

56.     Plaintiff utilizes his personal computer to access websites such as the Defendant's www.brickellhonda.com website. As do members of the public, Plaintiff uses his personal computer as a method of conveyance of their personal information.

57.     As do members of the public, Plaintiff stores his personal information and retains his browsing history on his personal computer.

58.     Throughout the Website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

59.     The Defendant informs the Website user that the user's personal information and browsing history is collected is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and

commences to shop on that website is subject to having his/her personal information conveyed to third parties. According to the Defendant's Website, those third parties include (but may not be limited to): (i) the Defendant's third party partners (such as Google and Facebook, but without so naming any other companies), (ii) third parties (including operators of third-party websites and/or social networking sites), and to (iii) other third party partner websites (without so naming the third parties).

60.     Plaintiff is unable to comprehend Defendant's Website; therefore, he has had no choice (and therefore no knowledge) of the Defendant's installation of software and collection of the website user's browsing history and analytics placed on his computer.

61.     Based upon the review of Defendant's Website, it is clear that, when a user accesses Defendant's Website, the Defendant installs software onto the user's computer. It is clear that the Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

62.     As such, through its Website, Defendant has committed a trespass against Plaintiff since the Website places software on their respective personal computers without their consent.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

63.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth herein above.

### Requirement for Effective Communication

64.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

65.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

66.     Section   28   C.F.R.   §36.303(c)   specifically   states   that   public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

67.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

68.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

69.     By virtue of the fact that Defendant's dealership is open to the public, it is a place of public accommodation pursuant to 42 U.S.C. §§s 12181(7)(E) & (F), it is subject to the requirements of Title III of the ADA, and the ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

70.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the products and services offered by Defendant's dealership and ability to investigate and choose an automobile dealership, the visually impaired have no access to Defendants dealership to purchase an automobile and to obtain financing for that purchase which Defendant's dealership offers to the public.

**The Website As A Place of Public Accommodation**

71.     Consistent with the text and legislative history of the ADA, the Department of Justice has long affirmed the application of Title III of the ADA to websites of public accommodations[9]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

72.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that

---

[9] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm 0(comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Plaintiff v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

73.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

74.     The www.brickellhonda.com website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §§s 12181(7)(E) & (F) as an integral part of Defendant's dealership by providing the public information on the physical location of the dealership and offers the public the ability to purchase a vehicle online, become educated as to the inventory of new and used automobiles Defendant offers, financing for those automobiles and auto repair services, and permits the user to contact Defendant's representatives online, and to schedule an appointment for automobile repair.

75.     In addition, Defendant's representatives within its auto dealership location has referred customers to Defendant's Website for additional information, as the Website provides information regarding its inventory of automobiles and financing terms such that the Website is an integral part of the public's needs with respect to Defendant's business.

76.     It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

77.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[10] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[11] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

78.     Recent case law supports that the intangible barriers presented within Defendant's Website is violative of the ADA.  In rendering his decision that Winn Dixie

---

[10] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.
[11] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[12], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

79.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Plaintiff's injuries are real, have occurred, and are continuing. Plaintiff's injuries will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

80.     Plaintiff's position is further supported by recent case law which states that organizations which have not fully updated their websites to insure accessibility for the visually impaired are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

81.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with

---

[12] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

82.     Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(II).

83.     Unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(III).

**Barriers to Access**

84.     As a result of the inaccessibility of Defendant's Website to be accessible to visually impaired individuals, those visually impaired individuals are denied full and equal access to Defendant's physical dealership location and the online services as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

85.     Defendant's Website is not accessible to users who are visually impaired such that visually impaired are unable to go to the Website and obtain the most perfunctory information such as what inventory of automobiles available for purchase or lease, find terms for financing such purchase (or lease), and purchase a vehicle online.

86.     Further, the Website does not offer include the universal symbol for the disabled[13] and the symbol for website accessibility[14] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

87.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

**Violations of the ADA**

88.     The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Website (in general). These violations are ongoing.

89.     As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

---

[13]  ™, or HTML "Accessibility" link for those individuals who are visually impaired

[14]

90.      Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

a)  Require Defendant adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.brickellhonda.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendant take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.brickellhonda.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Brickell Honda dealership (location) and becoming informed of Defendant's automobile inventory, financing options (lease and purchase), purchasing an automobile online, and scheduling repair services. During that time period prior to the Website being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from obtaining the products and

services made available to the public through Defendant's Website and through Defendant's physical dealership location.

91.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Miami Automotive Retail, Inc.

## COUNT II – TRESPASS

92.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth herein above.

93.     Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that he has accessed Defendant's www.brickellhonda.com website. Plaintiff's personal information has suffered a trespass due to the employment of software analytics by Defendant which are present on Defendant's Website, which the Plaintiff has navigated.

94.     Plaintiff (being unable to comprehend Defendant's Website to therefore become informed of Defendant's privacy/tracking policies) has been unaware that Defendant's Website was placing software on his computer.

95.     Plaintiff has not consented to the placement of software on his personal computers; therefore, Defendant has committed a trespass against Plaintiff.

96.     By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of the common law.

97.    Defendant's installation, operation, and execution of software on Plaintiff's computer has impaired the condition and value of his computers.

98.    At        Defendant's        Website        location (https://express.brickellhonda.com/cookie_policy), the Defendant states the following:

### Cookie Policy

'… we use cookies for a variety of purposes … and for marketing, but specifically we use Cookies on the Website for the following purposes:'

1.  Analytical Purposes: We use Cookies to analyze user activity in order to improve the Website. For example, using Cookies we can look at aggregate patterns like the average number of job searches that users perform. We can use such analysis to gain insights about how to improve the functionality and user experience of the Website.
2.  Your Preferences: We use Cookies to store certain user preferences on our Website. For example, we may store the recent searches you have performed in a Cookie so that we can allow you to easily repeat those searches when you return to our Website.
3.  Marketing: We use Cookies from third-party partners such as Google and Facebook for marketing purposes. These Cookies allow us to display promotional material to you on other sites you visit across the Internet. We may also share information about your behavior on the Site with third parties (including operators of third-party websites and/or social networking sites) in order to show you targeted advertisements and other content that has been customized for you.
4.  Referral Tracking: We use Cookies to associate user activity with the third party website that referred the user to our Website, or to associate user activity that we referred to a third party website. These third party partner websites receive credit for the activity of users they refer to our Website, or give us credit for the activity of users referred to such third party websites. We do not share any personal information or information about individual user activities with these partner entities.

99.    As a direct and proximate result of Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with Plaintiff's property, the Defendant has injured and impaired on the condition and value of Plaintiff's computer as follows:

a) By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b) By infringing on Plaintiff's right to exclude others from his computers;

c) By infringing on Plaintiff's rights to determine (as owner of his computer) which programs should be installed and operated on therein;

d) By compromising the integrity, security, and ownership of Plaintiff's computer; and

e) By forcing Plaintiff to expend money, time, and resources in order to remove the programs installed on his computer without notice or consent.

100. For all of the foregoing, the Plaintiff has no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Miami Automotive Retail, Inc. and requests the following injunctive and declaratory relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff (and other individuals with visual impairments) equal access to, and benefit from Defendant's services, programs, activities and facilities, as well as:

a) The Court issue a declaratory judgment that Defendant has violated Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its www.brickellhonda.com website to remove barriers in order that

individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[15] and sign of website accessibility[16] (standard WCAG 2.0) within its Website.  Such a clear display 00is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.brickellhonda.com website;

d) The Court enter an Order to compel Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such

---

[15]
[16]



reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

g) The Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

h) The Court to award injunctive and equitable relief as applicable, including:

    i.    prohibiting Defendant from engaging in the acts alleged above;

    ii.    requiring Defendant to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendant's placement of software on their computer(s); and

    iii.    requiring Defendant to provide Plaintiff reasonable means to decline participation in Defendant's placement of software on his computer;

i) The Court award damages in an amount to be determined at trial;

j) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees;

k) As to the count of trespass, the Court to award Plaintiff other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from

26

engaging in the conduct and practices of trespass as complained of herein; and

l)  That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 22nd day of March, 2018.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*

27